# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHINEME C. AGHAZU,                  *
                                    *
           Plaintiff,               *
                                    *        Civil No.      **PJM 15-1529**
v.                                  *
                                    *
SEVERN SAVINGS BANK, FSB, *et al.*, *
                                    *
           Defendants.              *
                                    *

## MEMORANDUM OPINION

Chineme Aghazu (Aghazu) has sued Severn Savings Bank, FSB (Severn), FCI Lender Services, Inc. (FCI), and Pontus SB Trust (Pontus),[1] alleging violations of the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, the Maryland Consumer Debt Collections Act (MCDCA), Md. Code Ann., Com. Law, § 14-201, *et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.* Severn, FCI, and Pontus (collectively, "Defendants") have filed Motions to Dismiss all counts. ECF Nos. 5, 10.

On November 9, 2015, the Court held a hearing on Defendants' Motions to Dismiss. ECF No. 16. Pursuant to the Court's November 9, 2015 Order, *see* ECF No. 17, the parties were directed to and thereafter filed additional papers in connection with the Motions to Dismiss, including a Supplemental Motion to Dismiss by Severn, ECF No. 18. For the following reasons, Severn's Motion to Dismiss and Supplemental Motion to Dismiss (ECF Nos. 5, 10) are

---

[1] The Complaint originally named Pontus Capital, LLC, as a Defendant in this matter. At the November 9, 2015 Motions Hearing, however, counsel for Pontus SB Trust represented that Pontus Capital, LLC has no direct relationship to the subject loan and property, and that Pontus SB Trust is the correct party in interest. Aghazu did not object. Accordingly, in a November 9, 2015 Memorandum Order, the Court substituted Pontus SB Trust for Pontus Capital, LLC, as a co-Defendant. ECF No. 17.

**GRANTED**, and FCI and Pontus' Motion to Dismiss (ECF No. 18) is **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTS[2]

### A. The Mortgage Loan from Severn

In October 2003, Aghazu obtained a mortgage Loan ("Loan") from Severn in the amount of $265,000.00. Compl. ¶ 8, ECF No. 1. The Loan was evidenced by a Note ("Note 1") and secured by a Deed of Trust encumbering Aghazu's home at 7704 Northern Avenue, Glenn Dale, MD 20769 (the "Property"). Compl., Exs. 1, 2, ECF No. 1-1. Aghazu and Severn subsequently agreed to modify the Loan on two occasions: first on February 11, 2008 (increasing the Loan amount to $340,000.00), then on August 28, 2008 (increasing the Loan amount to $380,000.00). Compl. ¶¶ 11-12; Compl. Exs. 3, 4, ECF No. 1-1. In addition to increasing the amount of the Loan in August 2008, the parties entered into a second Note ("Note 2"), which was a modified version of Note 1.[3] Compl. Exs. 4, 5, ECF No. 1-1. Under the terms of Note 2, Aghazu was obligated to amortize the $380,000.00 mortgage loan at 7.0% interest per annum, with monthly payments in the amount of $2,528.15. Compl. Ex. 5.

---

[2] The majority of the facts are as alleged in the Complaint or the exhibits attached to the Complaint. *See* Fed. R. Civ. P. 10(c). However, the Court also considers facts drawn from documents attached to the Defendants' Motions to Dismiss, which are integral to the Complaint and the authenticity of which is not disputed. *See Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)). Further, the Court takes judicial notice of matters in the public record, such as the bankruptcy proceedings referred to in the Complaint. *Trimble Navigation*, 484 F.3d at 705 (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

[3] Aghazu asserts in her Complaint that Note 2 was an entirely "new" Note, rather than a modification of Note 1. Compl. ¶ 13. However, as Defendants point out, the plain language of the August 28, 2008 Modification Agreement between the parties (attached as an exhibit to Aghazu's Complaint) makes clear that Note 2 was a *modified* version of Note 1, not an entirely "new" Note. *See* Compl. Ex. 4. This fact becomes important to assessing the viability of Aghazu's allegation that Severn's successors-in-interest, Pontus and FCI, were unlawfully collecting on the wrong Note.

**B.  The Bankruptcy Proceedings**

On August 21, 2009, Aghazu filed for Chapter 7 bankruptcy in the District Court of Maryland, Greenbelt Division. Ch. 7 Case No. 09-25607 (D. Md. Aug. 21, 2009). On October 14, 2009, during the course of the Chapter 7 bankruptcy, she filed an adversary proceeding against Severn, alleging violations of the TILA and wrongful foreclosure. Ch. 7 Case No. 09-25607, Adv. No. 09-719 (D. Md. Oct. 14, 2009). In response, Severn contended that Aghazu was in default under the Loan and that the balance due thereunder was $439,935.00, which included outstanding principal, accrued interest, unpaid escrow, late fees, attorney's fees, and costs. Ch. 7 Case No. 09-25607, Adv. No. 09-719, ECF No. 11.

In January 2010, to resolve this dispute, the parties executed a Mutual Release and Settlement Agreement and entered a Consent Order Resolving Motion to Dismiss Complaint and Dismissing Adversary Proceeding ("Consent Order"). *Id.*; Compl. Ex. 8, ECF No. 1-1. Under the terms of the Consent Order, each party was absolved of all "claims arising from the Lawsuit or the Borrower's procurement of the Loan." Compl. Ex. 8 ¶ 5. Further, Aghazu was permitted to remain in the Property until January 1, 2011 without having to make any mortgage payments. *Id.* ¶ 2. After that time, she was allowed to remain in the Property, provided that she would make interest-only payments at a reduced rate of $1,583.33 per month, and provided further that she would aggressively market the Property for sale by December 31, 2011. *Id.* If Aghazu failed to close under a contract of sale before December 31, 2011, the Consent Order entitled Severn to exercise all the rights it had under the original Loan documents, including Note 2. *Id.*

**C.  Aghazu's Post-Bankruptcy Occupancy of the Property and Loan Payments**

Aghazu did not sell the Property after the bankruptcy proceeding.[4] *See* Compl. ¶ 19; Pl.'s Line to File Exhibits, Aff. Chineme Aghazu ("Aghazu Aff.") ¶ 1, ECF No. 20-1. Beginning January 1, 2011, however, she did pay $1,583.33 each month toward her mortgage. She characterizes these payments as "new principal and interest payment[s]." *See* Compl. ¶ 18. It is clear, however, that the $1,583.33 Aghazu has been paying corresponds to the reduced rate *interest-only* payment that she was obliged to pay after January 1, 2011 under the terms of the Consent Order. Compl. Ex. 8 ¶ 5.[5] While the full extent to which Severn attempted to enforce its rights under Note 2 after December 31, 2011 is unclear, it did, on at least one occasion in August 2013, send Aghazu a Notice of Intent to Foreclose, informing her that she was in default under the Consent Order. Pl.'s Line to File Exhibits, Ex. D, ECF No. 20-5.

**D.  Severn's Sale of the Loan to Pontus SB Trust and Transfer of Servicing to FCI**

On December 31, 2014, Severn sold Aghazu's Loan to Pontus. Compl. Ex. 10; *see also* Severn's Reply, Ex. 1, ECF No. 7-1. On that same day, Severn notified Aghazu that it had sold her Loan to Pontus and further advised her that servicing of the Loan would be transferred to FCI, effective February 1, 2014. Compl. Ex. 10, ECF No. 1-1. Aghazu sent Severn a letter on January 6, 2014, asking for the payoff amount of her loan "as of January 2013." Compl. Ex. 9, ECF No. 1-1. Severn allegedly did not respond to this request. Compl. ¶ 23.

The Loan's new servicer, FCI, claims that on February 3, 2014, it sent Aghazu a Borrower Welcome Letter, advising her that the amount due under the Loan was $394,996.00. Compl. Ex. 13 at 0058, ECF No. 1-1. However, for the first time, in an Affidavit provided to the Court after the November 9, 2015 Motions Hearing, Aghazu states that she did not receive this

---

[4] Aghazu apparently continues to occupy the Property as of the present date.
[5] Aghazu did not enter into a contract of sale by December 31, 2011.

letter in February 2014, indicating that she only obtained a copy of it in response to a November 7, 2014 Qualified Written Request (QWR) she sent to FCI. *See* Aghazu Aff. ¶ 15.[6]

On February 19, 2014, Aghazu sent a payoff request to FCI. Compl. Ex. 11, ECF No. 1-1. On that same day, FCI sent her a payoff statement containing the word "DRAFT" in watermark on the paper, advising that the amount due under the Loan was $394,669.00. Compl. Ex. 12, ECF No. 1-1. On February 25, 2014, FCI sent another payoff statement to Aghazu, this time without the word "DRAFT" in watermark, and this time informing Aghazu that the amount due under the Loan was in fact $407,513.49. Compl. Ex. 13, ECF No. 1-1. The February 25, 2014 payoff statement included a line item for "Unpaid Charges" in the amount of $25,988.36. *Id.* Notably, a subsequent payment statement sent to Aghazu in October 2014 included a roughly similar figure – $26,860.64 – designated as "Fees" due. Compl. Ex. 15 at 0026. Aghazu asserts that these "Unpaid Charges" or "Fees" represent attorney's fees, property taxes, and other items that had been waived under the terms of the Consent Order.[7]

Around this time, which is to say beginning in December 2013 and continuing until March 2014, Aghazu says she attempted to refinance her mortgage with Mortgage One Solutions ("Mortgage One"). Aghazu Aff. ¶¶ 4, 14, 16, 17. She says she requested the payoff figures first from Severn and then from FCI in order to facilitate the refinancing process. *See id.* She claims, however, that due to the fact that the payoff figures she eventually received from FCI showed that she owed approximately $25,000 in unpaid charges or fees, Mortgage One declined to refinance her Loan. Pl.'s Line to File Exhibits, Ex. J, ECF No. 20-11. Aghazu takes the position that these additional "fees" inhibited her attempts to refinance. Compl. Exs. 12, 13; Pl.'s Line to

---

[6] Aghazu's post-Hearing Affidavit marks the first time in any of Aghazu's filings that she has directly asserted that she did not receive FCI's Welcome Letter. Her failure to do so will be addressed in Part III.D., *infra*.

[7] After the November 9, 2015 Hearing, Aghazu filed what she represents is an itemization of these "Fees." *See* Pl.'s Line to File Exhibits, Ex. B, ECF No. 20-3.

File Exhibits, Ex. J. Indeed, she asserts she was working to correct the alleged error in February and March 2014, after having been informed by Mortgage One that the additional "fees" might be an error stemming from the transfer of the Loan between Severn and FCI. *See* Pl.'s Line to File Exhibits, Ex. J.

On September 29, 2014, Aghazu received a Notice of Intent to Foreclose her Property from Pontus. Pl.'s Line to File Exhibits, Ex. I, ECF No. 20-10. The Notice yet again cited unpaid charges and fees, this time in the amount of $26,697.53, payment of which would be required to cure Aghazu's default. *Id.*

On November 7, 2014, Aghazu sent a Qualified Written Request (QWR) to FCI pursuant to the Real Estate Settlement Procedures Act, asking for certain information and requesting copies of any promissory notes executed by her. Compl. Ex. 14, ECF No. 1-1. On November 19, 2014, FCI sent a response to these requests. Compl. Ex. 15. This response included a copy of Note 1. *Id.*

**E.  Aghazu's Complaint**

On May 27, 2015, Aghazu filed her Complaint in this Court. She alleges that: Severn and FCI failed to provide her with accurate payoff information, in violation of the TILA Regulation Z, 12 C.F.R. § 1026.36(c)(3) (Count I)[8]; FCI made a false representation in connection with collection of her mortgage debt in violation of the FDCPA, 15 U.S.C. § 1692e(2)(A) (Count II); FCI engaged in unfair debt collection practices in violation of the FDCPA, 15 U.S.C. 1692f(1)[9]

---

[8] Aghazu alleges "failure to provide accurate payoff information" without citing a specific statute or regulation. In subsequent filings, however, she has clarified that 12 C.F.R. § 1026.36(c)(3) is the legal basis for her claims in Count I. Plf.'s Mem. Opp. Severn's Mot. Dismiss 3, ECF No. 6.

[9] Although Aghazu notes that § 1692f is the section of the FDCPA underlying this claim, she does not specify the appropriate subsection. Given the underlying facts of this case, 15 U.S.C. § 1692f(1) – barring the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" – seems to be the appropriate subsection.

(Count III); FCI and Pontus engaged in unlawful debt collection in violation of the MCDCA[10]

(Count IV); and FCI failed to give her adequate notice of a loan servicing transfer in violation of

RESPA, 12 U.S.C. § 2605(c)[11] (Count V).

Severn, FCI, and Pontus have moved to dismiss all counts, arguing pursuant to Federal

Rule of Civil Procedure 12(b)(6) that Aghazu fails to state a claim upon which relief may be

granted.

## II. STANDARDS OF LAW

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring

only that a plaintiff submit a "short and plain statement of the claim showing that [he or she] is

entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must

plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 554, 570 (2007). But this standard requires "more than a sheer possibility

that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a

court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.*

A district court has the discretion to grant a motion to dismiss with or without prejudice.

*Hinks v. Bd. of Educ. of Harford Cnty.*, CIV.A. WDQ–09–1672, 2010 WL 5087598, at *2 (D.

Md. Dec. 7, 2010). Dismissal with prejudice is proper if there is no set of facts the plaintiff could

---

[10] In her Complaint, Aghazu incorrectly refers to this Act as the "Maryland Consumer Debt Practices Act." She has clarified in later pleadings that Count IV alleges violations under the Maryland Consumer Debt *Collections* Act (MCDCA) (emphasis supplied).

[11] In her Complaint, Aghazu cites 12 U.S.C. § 2605*(b)(3)* as the statutory basis for her claim, not 12 U.S.C. § 2605(c). Section 2605(b)(3) imposes notice requirements under RESPA on loan *transferors*, while § 2605(c) imposes similar requirements on loan transferees. Given that Aghazu labels Count V as "RESPA TRANSFEREE VIOLATIONS" and only brings the claim against FCI (the loan *transferee* in the transaction between Severn and FCI), *see* Mem. Order, ECF No. 17, the Court will assume that Aghazu intended to bring her claim in Count V pursuant to 15 U.S.C. § 2605(c).

present to support his or her claim. *Id.* (citing *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)).

## III. ANALYSIS

In their briefings with respect to the Motions to Dismiss, the parties argue at length about Aghazu's Loan, especially as to her obligations under Note 1 and its modifications; the effect of Aghazu's bankruptcy proceeding and Consent Order; and the subsequent efforts of Defendants as note holders and/or loan servicers to collect on the mortgage debt. With respect to Aghazu's TILA and FDCPA claims (Counts I, II, and III), the Court deems these disputes largely immaterial, since the Court finds that they are barred by applicable statutes of limitations. As to the MCDCA and RESPA claims, however, the Court finds that Aghazu's loan servicers may well have made some errors in collecting on and servicing her debt after the bankruptcy proceedings. Indeed, counsel for FCI appears to have admitted as much at the November 9, 2015 Motions Hearing, acknowledging that there were clearly some issues with the "on-boarding" of Aghazu's loan by FCI. ECF No. 16. The Court is thus not prepared to dismiss the Complaint with prejudice in its entirety, but will permit Aghazu to re-plead her claims to address the deficiencies and issues identified by the Court. Thereafter, the Court is prepared to hold a bench trial as to the core issue of this dispute[12] – *viz.*, the calculation of the correct amount of Aghazu's mortgage debt.

The Court addresses Aghazu's claims in more detail.

---

[12] In her original Complaint, Aghazu requests a jury trial. The case, however, will essentially depend on determinations as to the legal effect of the bankruptcy proceedings and Consent Order – all issues for the Court, not for a jury to decide.

**A.  Count I: TILA Claims**

In Count I, Aghazu seeks damages against Severn and FCI under the Truth-in-Lending Act and its implementing regulation, Regulation Z, for "failure to provide payoff information."[13] The applicable statutory provision for this claim, 15 U.S.C. § 1639(g), provides: "A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance." This provision has been implemented in a corresponding regulation, 12 C.F.R. § 1026.36(c)(3), which mandates the following:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within 7 days of such a request because a loan is in bankruptcy or foreclosure . . . the payoff statement must be provided within a reasonable time. A creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement . . . to provide a payoff statement.

This regulation thus essentially requires "servicers [of home mortgage loans] to tell borrowers the account balance, or payoff amount, when asked." *Boardley v. Household Finance Corp. III*, 39 F. Supp. 3d 689, 698 (D. Md. 2014).

A mortgage loan servicer's failure to provide accurate payoff figures when asked may thus provide the basis of a TILA claim by a mortgage loan consumer. *See* 15 U.S.C. § 1640.

---

[13] As noted above, Aghazu's Complaint fails to cite any statutory or regulatory provision in support of her allegations in Count I. *See supra* text accompanying note 8. She simply styles the Count as "Failure to Provide Payoff Information." Ordinarily, the Court would expect counsel to be able to cite the legal provisions forming the basis of claims showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). Identifying legal authority apprises a defendant of "what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). However, for purposes of the discussion below, the Court will address the merits of Count I as though it had been properly pled.

However, another provision of the TILA, 15 U.S.C. § 1640(e), provides in pertinent part (and with exceptions not relevant here) that a person may bring "any action [under TILA] . . . *within one year* from the date of the occurrence of the violation." (emphasis added); *see also Boardley*, 39 F. Supp. 3d at 704 (applying the one-year statute of limitations for alleged TILA violations to a claim brought under 12 C.F.R. § 1026.36(c)(3)).

Aghazu claims that both Severn and FCI failed to comply with 12 C.F.R. § 1026.36(c)(3). The Court finds, however, that her TILA claims against both Defendants are barred by the TILA statute of limitations under 15 U.S.C. § 1640(e).

Aghazu alleges that she sent Severn a request for payoff figures on January 6, 2014, to which it did not respond. Compl. ¶¶ 22-23. The TILA and Regulation Z, as noted above, generally require servicers to respond to requests for payoff information *within seven days*, or a *reasonable time* in the case of mortgages in bankruptcy or default. *See* 15 U.S.C. § 1639(g); 12 C.F.R. § 1026.36(c)(3). If Severn did not respond to Aghazu's request for payoff information at all, the injury would have accrued seven days or, at most, a few weeks after her January 6, 2014 request (assuming Severn was only required to respond in a "reasonable time"). Aghazu, however, filed her Complaint on May 27, 2015, well after the one-year statute of limitations for this injury expired. *See Boardley*, 39 F. Supp. 3d at 704 (dismissing allegations of TILA violations because they were not brought within the statute of limitations period). Count I against Severn is accordingly dismissed with prejudice, since the Court concludes that no set of facts would overcome the statute of limitations bar on this claim. *See Hinks*, 2010 WL 5087598, at *2; *see also Brooks v. City of Winston-Salem*, 85 F. 3d 178, 181 (4th Cir. 1996) (noting that dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious defense").

Aghazu's TILA claim against FCI suffers from the same untimeliness problem. She alleges that she sent FCI a payoff request on February 19, 2014, to which the servicer responded: (1) on February 19, 2014, with a "draft" payoff statement, and (2) on February 25, 2014, with an updated payoff statement. Compl. ¶¶ 25-29. Although these responses by FCI were clearly delivered within the 7-day window required under the statute and corresponding regulation, Aghazu argues that the servicer violated the TILA because the statements were not "accurate." Compl. ¶ 31. According to Aghazu, the statements included charges that FCI had "no right to collect": namely, the approximately $25,000 in fees or unpaid charges included on the payoff statement. Compl. ¶¶ 25-29.

Here, the alleged injury – failure to respond with accurate numbers – may not even constitute a violation of the TILA, because the cognizable action is one for failure to respond at all, not to respond in timely fashion with what a plaintiff believes are inaccurate numbers. But even if there is such a cause of action for FCI's alleged conduct, it accrued at the latest on February 19, 2014, when Aghazu received the updated payoff statement from FCI, which included the allegedly inaccurate $25,000 in fees or charges at issue. Aghazu of course filed her Complaint on May 27, 2015, well-over a year after she received the February payoff statements from FCI.

Aghazu attempts to rescue her claim by asserting that the Court should equitably toll the limitations period. According to Aghazu, she had no reason to know of the source of the alleged inaccuracy of these payoff figures until FCI responded to her QWR on November 19, 2014. Pl.'s Reply to FCI's Supp. Mot. Dismiss, 2-3, ECF No. 23. The Court rejects this argument. In order to equitably toll a limitations period, Aghazu would have to plead facts showing "fraudulent concealment" on the part of FCI. *See Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 472

n.14 (D. Md. 2012); *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 797-98 (D. Md. 1998). But the facts alleged in Aghazu's Complaint show that, far from fraudulently concealing information, FCI responded to all of Aghazu's requests for information in a timely manner. *See* Compl. ¶¶ 25-29 (response to payoff request within one week); Compl. ¶ 37 (response to QWR within twelve days). Aghazu's Complaint falls far short of the high bar for the equitable tolling of the limitations period. *See Kerby*, 992 F. Supp. at 798 (noting that "setting aside a statute of limitations is no easy task, and no court that has held RESPA or TILA subject to equitable tolling appears yet to have proceeded to hold, on its facts, that the statute of limitations had been tolled"); *see also Chao v. Virginia Dept. of Transp.*, 291 F. 3d 276, 283 (4th Cir. 2002) (noting that the "circumstances under which equitable tolling has been permitted are . . . quite narrow," involving situations where "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time") (internal citations and quotations omitted).

Moreover, it is evident from Aghazu's own supplementary exhibits (a) that she was fully aware of the alleged inaccuracy during her refinancing efforts in February and March 2014, (b) that she knew of one potential source of the error (the transfer of the Loan from Severn to FCI and Pontus), and (c) that she was at that time attempting to contest the fees listed on her payoff statements. Pl.'s Line to File Exhibits, Ex. J. Aghazu's suggestion that she had no reason to know that the payoff statements were "inaccurate" prior to her QWR in November 2014 is wholly disingenuous. The Court holds that the TILA claim against FCI is also barred by the statute of limitations and will be dismissed with prejudice.

**B. Counts II and III: FDCPA Claims**

In Count II, Aghazu asserts that FCI falsely represented that it was collecting on Note 2 when it in fact only possessed Note 1,[14] in violation of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692e(2)(A). Compl. ¶¶ 36-39. In Count III, Aghazu asserts that FCI attempted to collect on various fees or unpaid charges, totaling approximately $25,000, which had previously been settled by the bankruptcy Consent Order, in violation of the FDCPA 15 U.S.C. § 1692f(1).[15] Compl. ¶¶ 43-49.

In general, the FDCPA prohibits abusive, deceptive, or unfair debt collection practices. *See* 15 U.S.C. § 1692. Fifteen U.S.C. § 1692e(2)(A) bars a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Fifteen U.S.C. § 1692f(1) provides that the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation)" violates the section "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." A consumer with debt may bring a private action to enforce these provisions under 15 U.S.C. § 1692k. Such actions, however, are barred by a one-year statute of limitations, which begins to run "within one year *from the date on which the violation occurs*." 15 U.S.C. § 1692k(d) (emphasis added).

Attempts to collect a debt are usually not one-time occurrences. Courts have thus had to interpret the "date on which the violation occurs" in circumstances when there are a series of attempts by a debt collector to enforce a particular obligation. In this jurisdiction, courts have

---

[14] The underlying merits of this claim are highly dubious, as explained in more detail in Part III.C., *infra*.

[15] As noted above, Aghazu fails to appropriately specify the applicable subsection of the statute forming the basis of her FDCPA claim in Count III. *See supra* text accompanying note 9. The Court stresses, again, that parties should be prepared to provide appropriate citations to legal authority in authoring a Complaint. However, rather than require Aghazu to re-plead this Count, the Court will assume it was properly pled for purposes of the Motions to Dismiss.

consistently held that, in situations such as those at bar, the limitations period begins to run on the date of the *first* violation, provided that all subsequent violations relate to the collection of the same underlying debt; the limitations period does not start up again with each subsequent demand. *See, e.g., Peckey v. Bank of Am., N.A.*, No. CIV.A. RDB-14-433, 2015 WL 1622967, at *3 (D. Md. Apr. 10, 2015); *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 316 (D. Md. 2014) *aff'd* 584 F. App'x 135 (4th Cir. 2014); *McGhee v. JP Morgan Chase Bank, N.A.*, No. CIV.A. DKC 12-3072, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012).

Aghazu's allegations in Counts II and III hinge upon her assertion that, throughout its servicing her mortgage beginning in February 2014, FCI has been "falsely" representing that it has the a right to collect on Note 2, and it has been unlawfully attempting to collect on fees or charges which were previously settled by the terms of the Consent Order. These allegedly "false" representations and unfair attempts to collect, however, began at the latest with the first "non-draft" payoff statement FCI sent to Aghazu. In this payoff statement, dated February 25, 2014, FCI made clear that it was attempting to collect on Aghazu's Loan, and that it was seeking to enforce the terms of the underlying Notes Aghazu had signed. *See* Compl. Ex. 13.  Further, this payoff statement put Aghazu on notice that she apparently owed (whether rightfully or not) approximately $25,000 in fees or unpaid charges. *See id.* While these representations and attempts to collect from FCI may have been repeated on subsequent payment statements, the first violation – the payoff statement sent on February 25, 2014 – marks the baseline for when the statute of limitations began to run. *See Peckey*, 2015 WL 1622967, at *3 (holding that "tolling begins on the date of the first wrongful communication"). Since Aghazu brought her FDCPA

claims, filed on May 27, 2015, several months after the expiration of the limitations period, she clearly faces dismissal of the claim.

Aghazu again attempts to salvage her claims. She argues that the Court should equitably toll her FDCPA claims, suggesting that she did not have reason to know about FCI's allegedly unfair or deceptive collection practices until receiving the response to her QWR in November 2014. The Court is unpersuaded. As Judge Quarles of this Court explained in *Betskoff v. Cosby*, No. CIV. WDQ-12-3757, 2013 WL 4587634, at *3 (D. Md. Aug. 27, 2013), the equitable tolling doctrine is only available

> in those rare instances when – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result. . . . Equitable tolling may apply when the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.

(quoting *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001); *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)) (internal quotations omitted). The facts alleged in the Complaint, quite simply, do not support the conclusion that FCI falsely represented that it had the right to enforce Note 2, or to collect certain fee amounts in relation to the Loan. Whether they do have that right or not has been fairly argued by FCI throughout the case. It remains to be seen whether the charges are in fact owed. But equitable tolling has no application here, and accordingly Aghazu's FDCPA claims are time-barred and Counts II and III of the Complaint against FCI are dismissed with prejudice.

## C.  Count IV: MCDCA Claim

In Count IV, Aghazu alleges that FCI and Pontus attempted to collect on Note 2 when in fact they only possessed Note 1, in violation of the Maryland Consumer Debt Collections Act

(MCDCA).[16] Aghazu does not specify which provision of the MCDCA FCI and Pontus supposedly violated, but it is clear from the Act and the context of the allegations in the Complaint that she means to assert that FCI and Pontus violated Md. Code Ann. Com. Law § 14-202(8), which provides that a collector of a debt may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

As they currently stand, Aghazu's allegations with respect to this Count suffer from serious deficiencies. For instance, in order to state a claim for relief under the MCDCA, a plaintiff must allege that "[d]efendants knew, or were deliberately indifferent to, the fact that they did not possess the right to enforce" the debt obligation at issue. *Bey*, 997 F. Supp. at 318. In her Complaint, Aghazu merely states that she called an FCI or Pontus representative, Andy Haley, on March 26, 2015, and that he "dunned [sic] Aghazu for [Note 2] when Pontus did not have the right to collect on [Note 2]." Compl. ¶ 54. The allegations of knowledge or deliberate indifference in this Count are unclear and, at best, conclusory. The Court is not required to accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal citation and quotation omitted). Again, FCI and Pontus have at least a fair basis to argue that the debt is owing.

Apart from that, Aghazu's assertion that FCI and Pontus were attempting to collect on the "wrong Note" (Note 2) is without merit. It appears that Aghazu's contention is that Pontus, the owner of the Loan, and FCI, the servicer, did not have the "right" to enforce the terms of Note 2 because they only possessed Note 1 (which she says she discovered when she sent FCI a QWR in November 2014). *See* Compl. ¶¶ 38-39, 53-54. As identified by FCI and Pontus, *see* FCI/Pontus' Mem. Supp. Mot. Dismiss 6-7, ECF No. 10-1, this apparent assumption by Aghazu

---

[16] As noted above, Aghazu improperly referred to this Act in her Complaint as the Maryland Consumer Debt Practices Act. *See supra* text accompanying note 10.

– that someone not in possession of a note cannot enforce it – is incorrect as a matter of law and fact. *See* Md. Code Ann., Com. Law § 3-301 ("'Person entitled to enforce' an instrument means . . . (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3-309 or § 3-418(d)."). Moreover, it is clear on the face of the documents Aghazu submitted in connection with her Complaint, as well as those alluded to in the Motions to Dismiss, that FCI and Pontus in fact did have the right to enforce Note 2: Severn was the original payee under Note 1, as modified by Note 2, and Severn assigned its rights under these Loan documents to FCI and Pontus on December 31, 2013. *See* Compl. Exs. 1, 4, 5; Severn's Reply, Exs. 1, 2, ECF Nos. 7-1, 7-2. FCI and Pontus thus became the rightful transferees of the Loan as a matter of law, and therefore had and have every right to enforce Aghazu's obligations under Note 2. Md. Code Ann., Com. Law § 3-203(b) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course.").

In spite of all these deficiencies in the Complaint, however, one cause of action under the MCDCA (or other right of action) does emerge as potentially viable, at least at this juncture, namely whether Aghazu in fact owes FCI and Pontus approximately $25,000 in "fees." Aghazu has suggested in supplemental pleadings that FCI's attempts to collect on these fees prevented her from obtaining refinancing from Mortgage One, so that if in fact these "fees" were not owed, and if Aghazu in fact lost an opportunity to refinance because the fees were wrongly claimed, she may well have stated a cause of action with actual, identifiable damages. Thus far, however, FCI and Pontus have provided no explanation for the said approximately $25,000 in "fees," such that the Court is left to speculate that the "fees" might well stem from attorney's fees, property

taxes, or other costs which were previously disposed of by the terms of the Consent Order, as Aghazu contests.

The Court also observes that there appear to be inconsistencies between the payment statements sent by FCI to Aghazu and what in fact Aghazu may owe under the Loan documents.

Consider: Under the terms of the Consent Order, Aghazu's original obligations under Note 2 should have been reinstated after December 31, 2011. Compl. Ex. 8. This means that, as of January 1, 2012, she should have been making monthly payments of $2,528.15 at a 7.0% yearly interest in order to repay the principal loan amount of $380,000 over the life of the Loan. Compl. Ex. 5. But a payment statement from FCI dated October 10, 2014 – i.e., after December 31, 2011 – lists Aghazu's monthly payment obligation as only $1,583.33. Compl. Ex. 14 at 0026. This payment statement also indicates that the annual interest rate on her Loan is 5.0%, not 7.0%. *Id.* Why after December 31, 2011 was Aghazu only being charged $1,583.33 per month instead of $2,528.15? Why was the yearly interest rate listed as 5.0% instead of 7.0%? The Court questioned counsel for FCI and Pontus about these discrepancies at the November 9, 2015 hearing, and the best counsel could conjecture was that there were clearly some issues in connection with the "on-boarding" of the Loan after its transfer from Severn.

It may be, as FCI and Pontus suggest, that Aghazu has unduly benefitted from inaccuracies in the companies' Loan repayment calculations. *See* FCI/Pontus Reply Am. Response Mot. Dismiss 5, ECF No. 22. But that does not answer the question of whether Aghazu is obligated to repay approximately $25,000 in fees and other charges. In view of this, Aghazu will be given thirty (30) days to file an amended MCDCA claim, seeking a declaration that she does not owe the referenced "fees" and seeking consequential damages (i.e., lost opportunity

damages with respect to the Mortgage One refinancing, a matter of course which she will eventually have to prove).

### D. Count V: RESPA Claim

Aghazu alleges that FCI, as transferee servicer of the Loan, failed to give her notice at least fifteen days before the effective date of the transfer, as required under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(c).[17] Compl. ¶ 60. In support of this allegation, she asserts on affidavit (but not in the Complaint) that she did not receive a Borrower Welcome Letter from FCI at any point prior to the transfer. Aghazu Aff. ¶ 60. She states that, in fact, she only learned that FCI was the new servicer of her loan when she requested payoff statements, first from Severn, then later from FCI. *Id.* In the Complaint itself, she alleges that, as a direct and proximate result of FCI's failure to send her appropriate notice of the transfer, she suffered damages, including "the loss of the refinance of the property, costs, counsel fees, time away from her business to tend to these matters, emotional and physical distress." Compl. ¶ 61.

Twelve U.S.C. § 2605(c) imposes certain notice requirements on transferee servicers of mortgage loans. Specifically, this provision requires that the transferee "servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower" . . . "not more than 15 days after the effective date of the transfer." 12 U.S.C. § 2605(c)(1)-(2). The contents of the notice should include information like the effective date of transfer, and the name, address, and toll-free telephone number of the servicer. 12 U.S.C. § 2605(c)(3). In the event that a transferee servicer fails to comply with this provision, it may be liable to the borrower for "any actual damages . . . as a result of the failure." 12 U.S.C. § 2605(f)(1)(A).

---

[17] As noted above, Aghazu cites the incorrect subsection of this statute in the Complaint. *See supra* text accompanying note 11. The correct citation for alleging a transferee notice violation is to 12 U.S.C. § 2605(c). Aghazu is advised to correct this error in any future amendment to the Complaint.

While Aghazu belatedly states on affidavit that she did not receive a Borrower Welcome Letter or other notice from FCI about the transfer of servicing of the Loan, no such allegation is expressly made in the Complaint. While Aghazu does state that "Transferee Servicer failed to give notice to Aghazu not less than 15 days before the effective date of the transfer of servicing," Compl. ¶ 60, the Court finds this conclusory statement impossible to credit, in light of the fact that a Borrower Welcome Letter from FCI, dated February 4, 2014, was actually included as one of Aghazu's Exhibits attached to the Complaint. Compl. Ex. 15 at 0059.[18]

In any case, the Court notes that Aghazu's claims for damages are simply not cognizable as a matter of law. "Time away from her business to tend to these matters" and "emotional and physical distress" are not compensable under RESPA. RESPA requires that a plaintiff plead "actual damages," that is—pecuniary or economic damages that flow directly from FCI's failure to provide notice. *See Offiah v. Bank of Am., N.A.*, No. CIV.A. DKC 13-2261, 2014 WL 4295020, at *3-4 (D. Md. Aug. 29, 2014); *Minson v. CitiMortgage, Inc.*, No. CIV.A. DKC 12-2233, 2013 WL 2383658, at *5 (D. Md. May 29, 2013). Nor would Aghazu's claims for "costs" and "counsel fees" in bringing the suit be compensable, so long as she could posit no cognizable actual damages. *See Bullock v. Ocwen Loan Servicing*, LLC, No. CIV. PJM 14-3836, 2015 WL 5008773, at *11 (D. Md. Aug. 20, 2015). Fundamentally, insofar as Aghazu claims actual damages because FCI's failure to provide adequate notice under RESPA led to the loss of an opportunity to refinance the mortgage on her home, that claim, without more, borders on the fanciful. How could failure to receive the notice of the transfer of the servicing of the Loan lead to a lost opportunity to refinance? Perhaps some logic and facts exist to support this assertion –

---

[18] As noted in Part I.D, *supra*, Aghazu has suggested that this Borrower Welcome Letter was only received in response to Aghazu's November 2014 QWR to FCI. However, if this was in fact the case, such a fact should have been clarified and expressly asserted in the Complaint.

improbable as that may seem. But for now, the claim has no substance whatsoever. Many more facts would have to be pled to make this claim seem plausible.

Accordingly, the Court will give Aghazu thirty (30) days in accordance with the Court's rulings herein to re-plead this Count to set forth a plausible nexus between the purported failure to receive notice and the loss of an opportunity to refinance her mortgage.

## IV. CONCLUSION

For the foregoing reasons, Severn's Motion to Dismiss and Supplemental Motion to Dismiss (ECF Nos. 5, 18) are **GRANTED**. FCI and Pontus' Motion to Dismiss (ECF No. 10) is **GRANTED IN PART** and **DENIED IN PART**, as set forth in the accompanying Order.


                                        _____/s/_____
                                        **PETER J. MESSITTE**
                                        **UNITED STATES DISTRICT JUDGE**

**March 1, 2016**