# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHINEME C. AGHAZU,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No.    **PJM 15-1529** |
| v. | * | |
| | * | |
| **SEVERN SAVINGS BANK, FSB,  *et al.*,** | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM OPINION

*Pro se* Plaintiff Chineme Aghazu (Aghazu) has sued Severn Savings Bank, FSB (Severn), FCI Lender Services, Inc. (FCI), and Pontus SB Trust (Pontus).[1]  In her original Complaint (ECF No. 1), Aghazu alleged violations of the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, the Maryland Consumer Debt Collections Act (MCDCA), Md. Code Ann., Com. Law, § 14-201, *et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*

Following an initial round of Motions to Dismiss (ECF Nos. 5, 10, 18), followed by a hearing in open court, the Court issued a Memorandum Opinion and Order dated March 1, 2016 (ECF Nos. 24, 25), granting Severn's Motion to Dismiss and Supplemental Motion to Dismiss (ECF Nos. 5, 18) and granting in part and denying in part FCI and Pontus' Motion to Dismiss

---

[1]  Aghazu's original Complaint (ECF No. 1) named Pontus Capital, LLC, as a Defendant. At the November 9, 2015 Motions Hearing, however, counsel for Pontus SB Trust represented that Pontus Capital, LLC had no direct relationship to the subject loan and property, and that, in fact, Pontus SB Trust was the correct party in interest. Aghazu did not object to the proposed substitution. Accordingly, by Memorandum Order dated November 9, 2015, the Court substituted Pontus SB Trust for Pontus Capital, LLC, as a co-Defendant. ECF No. 17. The Amended Complaint (ECF No. 29) correctly refers to Pontus SB Trust as a Defendant.

(ECF No. 10). In so doing, the Court dismissed with prejudice Aghazu's TILA and FDCPA claims (Counts I, II, and III) and dismissed without prejudice her MCDCA and RESPA claims (Counts IV and V),[2] granting her leave to amend those counts. Aghazu did file an Amended Complaint (ECF No. 29), and thereafter FCI and Pontus (collectively, "Defendants") filed a joint Motion to Dismiss (ECF No. 35).

On September 6, 2016, the Court held a one-day Bench Trial to address a limited set of issues that it believed it needed to resolve before it could rule on Defendants' Motion to Dismiss.[3] The next day the Court ruled, as a matter of law, that Aghazu was not liable for the approximately $14,000 in attorneys' fees and costs claimed by Severn or Defendants that had been discharged in the Consent Order following Aghazu's bankruptcy proceedings or for fees and costs purportedly incurred in connection with a foreclosure proceeding that was never filed. ECF No. 56. The Court further determined that Aghazu was not personally liable to Severn or Defendants in the amount of $12,572.97 for the Fiscal Year 2010 property taxes paid to Prince George's County by Severn on her behalf, such that she should not have been assessed the amount of the unpaid taxes in her current mortgage account.[4]

Aghazu filed an Opposition to Defendants' Motion to Dismiss Amended Complaint (ECF No. 60) to which Defendants did not reply.

For the following reasons, Defendants' Motion to Dismiss Amended Complaint (ECF No. 35) is **GRANTED IN PART** and **DENIED IN PART**.

---

[2] By Order dated November 9, 2015, the Court dismissed Count V with prejudice as to Severn. Accordingly, because Count I, the only remaining claim against Severn, was also dismissed with prejudice, Severn was and is no longer a Defendant in the case.
[3] Prior to the September 6, 2016 Bench Trial, Aghazu's attorney withdrew his appearance. Aghazu chose to represent herself *pro se* at the Bench Trial and has continued *pro se* to date.
[4] The bases of the Court's rulings are elaborated *infra*.

## I. FACTS AND PROCEDURAL HISTORY[5]

### A.  The Mortgage Loan from Severn

In October 2003, Aghazu obtained a mortgage Loan ("Loan") from Severn in the amount of $265,000.00. Compl. ¶ 8, ECF No. 1. The Loan was evidenced by a Note ("Note 1") secured by a Deed of Trust encumbering Aghazu's home at 7704 Northern Avenue, Glenn Dale, MD 20769 (the "Property"). Compl., Exs. 1, 2, ECF No. 1-1. Aghazu and Severn subsequently agreed to modify the Loan on two occasions: first, on February 11, 2008 (increasing the Loan amount to $340,000.00); later, on August 28, 2008 (increasing the Loan amount to $380,000.00). Compl. ¶¶ 11-12; Compl. Exs. 3, 4, ECF No. 1-1. In addition to increasing the amount of the Loan in August 2008, the parties executed a second Note ("Note 2"), which was a modified version of Note 1.[6] Compl. Exs. 4, 5, ECF No. 1-1. Under the terms of Note 2, Aghazu was obligated to amortize the $380,000.00 mortgage loan at 7.0% interest per annum, with monthly payments in the amount of $2,528.15. Compl. Ex. 5.

### B.  Fiscal Year 2010 Taxes and Insurance

Apart from the foregoing, in 2009, Severn paid $12,572.97 to Prince George's County to cover the yearly property taxes on Aghazu's Property. Severn also paid $1,075.23 for insurance. Both of these charges were debited against Aghazu's current mortgage account which, at the

---

[5] The majority of the facts are taken as alleged in the Amended Complaint, the exhibits attached to the Amended Complaint, or the exhibits attached to the original Complaint. *See* Fed. R. Civ. P. 10(c). However, the Court also considers facts drawn from documents attached to the Defendants' Motions to Dismiss, which are responsive to the Complaints, the authenticity of which is not disputed. *See Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)). Additionally, the Court takes judicial notice of matters in the public record, such as the bankruptcy proceedings in this Court referred to in the original and Amended Complaints. *Trimble Navigation*, 484 F.3d at 705 (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

[6] Aghazu asserts in her Amended Complaint that Note 2 was an entirely "new" Note, rather than a modification of Note 1. Amended Compl. ¶ 13. However, as Defendants point out, the plain language of the August 28, 2008 Modification Agreement between the parties (attached as an exhibit to Aghazu's original Complaint) makes clear that Note 2 was only a *modified* version of Note 1, not an entirely "new" Note. *See* Compl. Ex. 4.

time had a positive balance of $2,122.29, leaving a balance purportedly owed by her of $11,525.91.[7]

## C. The Bankruptcy Proceedings

On August 21, 2009, Aghazu filed for Chapter 7 bankruptcy in this Court. Ch. 7 Case No. 09-25607 (D. Md. Aug. 21, 2009). On October 14, 2009, during the course of the Chapter 7 proceeding, with leave of the Court, she filed an adversary proceeding against Severn, alleging violations of the TILA and wrongful foreclosure. Ch. 7 Case No. 09-25607, Adv. No. 09-719 (D. Md. Oct. 14, 2009). In response, Severn contended that Aghazu was in default under the Loan and that the balance she owed thereunder was $439,935.00, which included outstanding principal, accrued interest, unpaid escrow amounts, late fees, attorney's fees, and costs. Ch. 7 Case No. 09-25607, Adv. No. 09-719, ECF No. 11.

In January 2010, in order to resolve their dispute, the parties executed a Mutual Release and Settlement Agreement and entered a Consent Order Resolving [the] Motion to Dismiss [the] Complaint and Dismissing [the] Adversary Proceeding ("Consent Order"). *Id*.; Compl. Ex. 8, ECF No. 1-1. Pursuant to the Consent Order, Aghazu was permitted to remain in the Property until January 1, 2011 without having to make any mortgage payments. Compl. Ex. 8 ¶ 2. After that time, she was allowed to remain in the Property, provided that she make interest-only payments at the reduced rate of $1,583.33 per month, and provided further that she aggressively market the Property for sale by December 31, 2011. *Id.* If Aghazu failed to close under a contract

---

[7] Three account statements received by Aghazu from December 2011 through February 2012 indicated a positive escrow balance of $11,525.91. Then, beginning in June 2012, her account statements indicated a negative escrow balance in the exact same amount. *See Plf.s' Ex. 2 at Bench Trial.* At the September 6, 2016 Bench Trial and in its September 7, 2016 Order, the Court decreed that Aghazu was not personally liable to Severn or Defendants for the Fiscal Year 2010 property taxes paid to Prince George's County or for the insurance payments made by Severn on her behalf. However, the Court clarified that those tax and insurance payments, less the amount already paid from Aghazu's escrow account, a net of $11,525.91, should be added to the lien on the Property. See further discussion at Note 17, *infra*.

of sale before December 31, 2011, the Consent Order entitled Severn to exercise all the rights it had under the original Loan documents, including Note 2. *Id.* At the same time, under the terms of the Consent Order, each party was absolved of all "claims arising from the Lawsuit or the Borrower's procurement of the Loan." *Id*. ¶ 5. The Consent Order stated that "[t]his Release shall unconditionally remain in effect even if Borrower fails to close under a contract of sale for the purchase of the Property on or before December 31, 2011, and alternatively, this release shall not bar Lender from exercising all of its rights afforded to it under the Loan Documents should Borrower fail to comply with the terms of this Agreement or should closing under a contract not be consummated on or before December 31, 2011, for the purchase of the Property." *Id*. Pursuant to the Consent Order, both Aghazu and Severn were deemed responsible for and left to pay their own legal fees, expenses, and costs. *Id.* ¶ 7.

### D.  Aghazu's Post-Bankruptcy Occupancy of the Property and Loan Payments

Aghazu never did sell the Property following the bankruptcy proceeding.[8] *See* Compl. ¶ 19; Pl.'s Line to File Exhibits, Aff. Chineme Aghazu ("Aghazu Aff.") ¶ 1, ECF No. 20-1. Beginning January 1, 2011, however, she duly paid and has continued to pay $1,583.33 each month toward her mortgage. She characterizes these payments as "new principal and interest payment[s]." *See* Compl. ¶ 18. It is clear, however, that the $1,583.33 Aghazu has been paying corresponds to the reduced rate *interest-only* payment she was obliged to pay after January 1, 2011 under the terms of the Consent Order. Compl. Ex. 8 ¶ 5. While the extent to which Severn may have attempted to enforce its full rights under Note 2 after December 31, 2011 is unclear, on at least one occasion, in August 2013, Severn did send Aghazu a Notice of Intent to Foreclose,

---

[8] She apparently continues to occupy the Property as of the present date.

informing her that she was in default under the Consent Order. Pl.'s Line to File Exhibits, Ex. D, ECF No. 20-5.

**E.  Severn's Sale of the Loan to Pontus SB Trust and Transfer of Servicing to FCI**

On December 31, 2013, Severn sold Aghazu's Loan to Pontus. Compl. Ex. 10; *see also* Severn's Reply, Ex. 1, ECF No. 7-1. On that same day, Severn notified Aghazu that it had sold her Loan to Pontus and further advised that, effective February 1, 2014, servicing of the Loan would be transferred to FCI. Compl. Ex. 10, ECF No. 1-1. Aghazu avers that she sent Severn a letter on January 6, 2014, asking for the payoff amount of her loan "as of January 2013" (presumably she intended January 2014) Compl. Ex. 9, ECF No. 1-1, but that Severn never responded to this request. Compl. ¶ 23.

The Loan's new servicer, FCI, claims that on February 3, 2014 it sent Aghazu a Borrower Welcome Letter, advising her that the amount due under the Loan was $394,996.20. Compl. Ex. 15 at 0058, ECF No. 1-1. Aghazu alleges that she did not receive this letter in February 2014, asserting that she only obtained a copy of it in response to a November 7, 2014 Qualified Written Request (QWR) she sent to FCI. *See* Aghazu Aff. ¶ 15.

**F.  Fees Charged to Aghazu and Her Attempt to Refinance**

On February 19, 2014, Aghazu sent a payoff request to FCI. Compl. Ex. 11, ECF No. 1-1. On that same day, FCI sent her a payoff statement containing the word "DRAFT" in large letters across the paper, indicating that the amount due under the Loan was $394,669.00.[9] Compl. Ex. 12 at 0188, ECF No. 1-1. The statement included $11,571.70 in "unpaid charges" itemized as "negative escrow balance" and interest. *Id.* On February 25, 2014, FCI sent another payoff statement to Aghazu, this time without the word "DRAFT," and this time informing Aghazu that

---

[9] The amount of the February 19, 2014 request looks very much like the $394,996.20 Defendants claimed was due on February 3, 2014. This is not a typographical error. Rather, the amount claimed for some reason decreased by nearly $300.00 in the intervening 16 days.

the total amount due under the Loan was $407,513.49. Compl. Ex. 13, ECF No. 1-1. The February 25, 2014 payoff statement included a line item for "Unpaid Charges" in the amount of $25,988.36. *Id.* A subsequent payment statement sent to Aghazu in October 2014 included a roughly similar figure – $26,860.64 – designated as "Fees" due. Compl. Ex. 15 at 0026. Aghazu asserts that these "Unpaid Charges" or "Fees" represented attorney's fees, property taxes, and other items that had been waived under the terms of the Consent Order.[10] And, indeed, on March 24, 2014, Aghazu received a letter from Severn stating that "[f]rom October 2008 through December 2009, Severn had incurred attorney fees associated with foreclosure filings, bankruptcy filings, and negotiation, drafting and execution of the December 15, 2009 Mutual Release and Settlement Agreement." *Id.*[11] The letter also stated that the amount Aghazu owed for the "negative escrow of $11,525.91 [was] a result of [her] failure to pay real estate taxes on the property securing the loan for [2009 to 2010], totaling $12,572.97." *Plf.s' Ex. 6 at Bench Trial*.

Around this time, which is to say beginning in December 2013 and continuing until March 2014, Aghazu says she was attempting to refinance her mortgage with an entity known as Mortgage One Solutions ("Mortgage One"). Aghazu Aff. ¶¶ 4, 14, 16, 17. In the process, she says, she requested payoff figures first from Severn and then from FCI in order to facilitate the transaction. *See id.* Aghazu claims, however, that due to the fact that the payoff figures she eventually received from FCI erroneously showed that she owed approximately $25,000 in unpaid fees and costs, Mortgage One declined to refinance her Loan. Pl.'s Line to File Exhibits, Ex. J, ECF No. 20-11. In other words, these additional "fees" and "costs" which Aghazu claims were improper, caused her to lose her opportunity to refinance. Compl. Exs. 12, 13; Pl.'s Line to

---

[10] Along with her Amended Complaint, Aghazu has attached what she represents is an itemization of these "Fees." *See* Am. Compl. Ex. 18, ECF No. 35-18.
[11] The letter further stated that the "attorney fees of $14,416.66 [were] the result of [Aghazu's] failure to pay [her] loan as agreed."

File Exhibits, Ex. J. In fact, at the September 6, 2016 Bench Trial, Aghazu called former Mortgage One Loan Officer Harold White as a witness, who testified that Aghazu's loan had been approved pending receipt of payoff figures from Defendants, but that after Mortgage One received the payoff figures including the allegedly unpaid fees and costs, her loan was denied because the loan-to-value ratio had changed. White's testimony to this effect is further recounted in the text accompanying Note 18, *infra*.

Aghazu asserts that she attempted to correct Defendants' alleged error regarding the fees and costs in February and March 2014, after having been informed by Mortgage One that the additional "fees" might in fact be an error stemming from the transfer of the Loan from Severn to Pontus, with FCI as servicer, but she was unable to convince Defendants that they were indeed mistaken. *See* Pl.'s Line to File Exhibits, Ex. J.

On September 29, 2014, Pontus sent Aghazu a Notice of Intent to Foreclose her Property. Pl.'s Line to File Exhibits, Ex. I, ECF No. 20-10. The Notice yet again cited the unpaid fees and costs, this time totaling $26,697.53, payment of which Pontus indicated would be required in order to cure Aghazu's supposed default. *Id.*

## G. Aghazu's Original Complaint, Defendants' Motions to Dismiss, and the Court's March 1, 2016, Memorandum Opinion and Order

On May 27, 2015, Aghazu filed her original Complaint in this Court, alleging that Severn and FCI had failed to provide her with accurate payoff information, in violation of Regulation Z of the TILA, 12 C.F.R. § 1026.36(c)(3) (Count I)[12]; that FCI had made a false representation in connection with the collection of her mortgage debt in violation of the FDCPA, 15 U.S.C. § 1692e(2)(A) (Count II); that FCI had engaged in unfair debt collection practices in violation of

---

[12] Aghazu alleged Defendants failed "to provide accurate payoff information," without citing a specific statute or regulation. In subsequent filings, however, she clarified that 12 C.F.R. § 1026.36(c)(3) was the legal basis for her claims in Count I. Plf.'s Mem. Opp. Severn's Mot. Dismiss 3, ECF No. 6.

the FDCPA, 15 U.S.C. 1692f(1) (Count III)[13]; that both FCI and Pontus had engaged in unlawful debt collection in violation of the MCDCA (Count IV); and that FCI and Severn had failed to give her adequate notice of a loan servicing transfer in violation of RESPA, 12 U.S.C. § 2605(c) (Count V).[14]

Severn, FCI, and Pontus moved to dismiss all counts of the original Complaint, arguing pursuant to Federal Rule of Civil Procedure 12(b)(6) that Aghazu had failed to state a claim upon which relief might be granted.

On March 1, 2016, the Court issued a Memorandum Opinion and Order dismissing with prejudice Aghazu's TILA and FDCPA claims (Counts I, II, and III) because they were barred by applicable statutes of limitations but dismissing without prejudice her MCDCA and RESPA claims (Counts IV and V) for failure to state a claim. As to the dismissals without prejudice, the Court granted Aghazu leave to re-plead her claims to address the deficiencies in the original Complaint the Court had identified in its Memorandum Opinion.

## H.  Aghazu's Amended Complaint and the September 6, 2016 Bench Trial

On April 1, 2016, Aghazu—who at the time was still represented by counsel—filed the Amended Complaint now before the Court, this time alleging violation of the MCDCA by both FCI and Pontus and violation of RESPA against FCI.[15] In support of the MCDCA[16] claim, the

---

[13] Although Aghazu noted in her original Complaint that § 1692f was the section of the FDCPA underlying her claim, she did not specify the appropriate subsection. Given the underlying facts of this case, the Court determined that 15 U.S.C. § 1692f(1)—barring the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law"—was the appropriate subsection.

[14] As noted above, by Order dated November 9, 2015, the Court dismissed Count V with prejudice as to Severn.

[15] The Amended Complaint once again asserts claims against Severn, FCI, and Pontus pursuant to the TILA and/or the FDCPA, despite the fact that those claims have been dismissed with prejudice. Aghazu does, however, acknowledge that her TILA claim against FCI and Severn has been dismissed. There is no such acknowledgement by her as to the two FDCPA claims.

Amended Complaint includes a number of factual allegations regarding attorneys' fees, property taxes, insurance, and other costs that Aghazu alleges were improperly claimed by Defendants. Further, with regard to her RESPA claim, Aghazu's Amended Complaint adds an allegation that attempts to spell out the nexus between Defendants' purported violation and the harm Aghazu has allegedly suffered because Mortgage One was unwilling to refinance the mortgage on her home.

On May 20, 2016, Defendants filed a Motion to Dismiss the Amended Complaint for failure to state a claim. But, as indicated previously, the Court felt it was appropriate to consider certain legal issues before it could evaluate the Motion to Dismiss.

Accordingly, on September 6, 2016, the Court held a one-day Bench Trial to address the limited issue of the approximately $25,000 in fees and costs allegedly owed by Aghazu, and the effect, if any, that this amount allegedly due might have had on Aghazu's efforts to refinance with Mortgage One. At the Bench Trial, and in its September 7, 2016 Order issued the next day, the Court made two key findings. <u>First</u>, it determined that, as a matter of law, the attorneys' fees and costs Defendants claimed Aghazu owed in fact represented either attorneys' fees and costs incurred by Severn during Aghazu's bankruptcy proceedings or other fees and costs that had been incurred in preparation for a threatened foreclosure in 2011 that Severn never actually initiated. The Court held that, in light of the provision of the Consent Order following the bankruptcy proceeding that made each party responsible for their own legal fees, expenses, and costs, any attorneys' fees or costs Defendants or their predecessor in interest (i.e. Severn) may have incurred during the bankruptcy proceedings were fully disposed of by the Consent Order

---

[16] As in her original Complaint, Aghazu incorrectly refers to this Act as the "Maryland Consumer Debt Practices Act." Although she clarified in later pleadings that Count IV alleged violations under the Maryland Consumer Debt *Collections* Act (MCDCA) (emphasis supplied), her Amended Complaint, once again, refers to the MCDCA by the wrong name.

and were not properly collectible by Defendants. The Court also determined that Aghazu could not be held responsible for fees and costs associated with a foreclosure that was never initiated. In sum, the Court held as a matter of law that Aghazu was liable for none of the attorneys' fees and costs claimed by Severn or Defendants. <u>Second</u>, the Court held that, following a bankruptcy, unpaid property taxes or insurance payments could only be added to a lien on the property, but were not collectible from Aghazu <u>personally</u>.[17] *See Forsyth Cty. & City of Winston-Salem Tax Collector v. Burns*, 891 F.2d 286 (4th Cir. 1989); *Rhoads v. Sommer,* 401 Md. 131, 157, 931 A.2d 508, 523 (2007); *United States v. Alfano*, 34 F. Supp. 2d 827, 850 (E.D.N.Y. 1999).

At the Bench Trial, the Court also heard testimony from Harold White, Aghazu's Mortgage One Loan Officer, who testified that Aghazu's loan had in fact been tentatively approved pending payoff figures, but that after Mortgage One received the payoff figures from Defendants, her loan had been denied. He stated that the loan was denied because of the change in the loan-to-value ratio. When the Court inquired whether the $25,000 listed in fees and costs affected the approval of Aghazu's loan, White testified that "the $25,000 additional was the thing that pretty much took it to where it was an approvable loan to non-approvable loan."[18]

In effect, as will now be explained, the Court ruled, as a matter of law, that Defendants' Motion to Dismiss would be DENIED as to Aghazu's MCDCA claim, and that Aghazu could proceed on her claim under that statute.

---

[17] In declaring, as a matter of law, that Aghazu did not owe the approximately $25,000 claimed by Defendants for attorneys' fees and costs, property taxes, and insurance payments, the Court was granting ancillary relief pursuant to its equitable powers. *See Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291 (1960). *See, e.g., Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F. Supp. 2d 456, 472 (D. Md. 2000). It should be noted that in her Amended Complaint, Aghazu asked for "such other and further relief as the nature of her cause requires."

[18] White did, however, say that if Aghazu had not sought to take out $20,000 in cash as part of the loan, she could have gone forward with the transaction.

## II. STANDARDS OF LAW

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he or she] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). But this standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A district court has the discretion to grant a motion to dismiss with or without prejudice. *Hinks v. Bd. of Educ. of Harford Cnty.*, CIV.A. WDQ–09–1672, 2010 WL 5087598, at *2 (D. Md. Dec. 7, 2010). Dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his or her claim. *Id.* (citing *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)).

## III. ANALYSIS

As an initial matter, the Court reminds that Counts I, II, and III of Aghazu's original Complaint have already been dismissed with prejudice. Accordingly, the Court need not revisit the deficiencies of those claims, which were dispatched in its March 2, 2016 Memorandum Opinion.

## A.  Count IV: MCDCA Claim

### a.  Aghazu Has Adequately Stated a Claim Upon Which Relief May Be Granted

In Count IV of the Amended Complaint, Aghazu alleges that Defendants violated the MCDCA[19] by improperly attempting to collect fees and costs she did not owe.[20] Aghazu, once again, does not specify which provision of the MCDCA Defendants supposedly violated, but it is clear from the Act and the context of the allegations in the Amended Complaint that she means to assert that FCI and Pontus violated Md. Code Ann. Com. Law § 14-202(8), which provides that a collector of a debt may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." "To plead a claim under [this section of] the MCDCA, Plaintiff must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so." *Lewis v. McCabe Weisberg & Conway,* 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014).

There is no question that Defendants have sought to collect thousands of dollars in "fees" and "costs" from Aghazu going back as far as early 2012. As discussed *supra*, at the September 6, 2016 Bench Trial, the Court determined that Aghazu did not owe Defendants any of these fees or costs either because they were clearly disposed of as part of the Consent Order following Aghazu's bankruptcy or because they were incurred in preparation for a foreclosure in 2011 that Severn never actually initiated. Furthermore, the Court held that Aghazu could not be <u>personally</u> assessed for the Fiscal Year 2010 property tax payment or insurance payment made on her

---

[19] As noted above, Aghazu improperly refers to this Act in her Amended Complaint as the Maryland Consumer Debt Practices Act. *See supra* text accompanying Note 16.

[20] Aghazu also alleges that Defendants violated the MCDCA by attempting to collect on Note 2 when in fact they only possessed Note 1. However, as the Court explained in its March 1, 2016 Memorandum Opinion, Aghazu's assertion that FCI and Pontus were attempting to collect on the "wrong Note" is without merit.

behalf; these would at most add to Defendants' lien on the mortgage property. *See. Alfano*, 34 F. Supp. 2d 827at 850.

Despite this, in their numerous demands on Aghazu, Defendants continuously claimed, attempted, and threatened to enforce a right that they did not possess.

In order to satisfy the second element of the relevant MCDCA claim, a plaintiff must allege that "[d]efendants knew, or were deliberately indifferent to, the fact that they did not possess the right to enforce" the debt obligation at issue. *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 318 (D. Md. 2014) *aff'd* 584 F. App'x 135 (4th Cir. 2014). Aghazu has set forth compelling evidence that Defendants had actual or at least constructive knowledge of the illegitimacy of the purported fees and costs or, at the very least, has shown that Defendants were deliberately indifferent to the legitimacy of said fees and costs.

Finally, as will be discussed momentarily, Aghazu has adequately alleged that she suffered damages by reason of Defendants' violation.

In sum, as to her MCDCA claim, Aghazu has adequately stated a claim upon which relief may be granted. Defendants' Motion to Dismiss Count IV will therefore be **DENIED**.

### b.  Potential Damages for Violation of the MCDCA

"A collector[21] who violates any provision of [the MCDCA] is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish

---

[21] The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md.Code Ann., Com. Law, § 14–201(b). By the plain meaning of the language, this definition clearly extends to the creditor itself and not merely a collector of a debt. Cognizant of the plain meaning of such language, courts in Maryland have specifically acknowledged that creditors are appropriate defendants in MCDCA suits. *See, e.g., Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md. 2013) (stating that "the MCDCA [] allows for recovery against creditors that attempt to collect debts when there is no right to do so"). *See also Green v. Ford Motor Credit Co.*, 152 Md. App. 32, 42 (2003); *Dick v. Mercantile-Safe Deposit & Trust Co.*, 63 Md. App. 270, 279, (1985). This is in marked contrast to the FDCPA, which by its terms does not apply to creditors collecting debts in their own names and whose primary business is not debt collection. *See* 15 U.S.C.

suffered with or without accompanying physical injury." Md. Code Ann., Com. Law, § 14-203.[22]

Accordingly, if Defendants are held to have violated the MCDCA, Aghazu may seek recovery for the actual damages she sustained as well as for the emotional distress and/or mental anguish she endured because of that violation.

Here, Aghazu has proffered evidence that she lost an opportunity to refinance her loan with Mortgage One because of Defendants' inappropriate insistence that she owed certain "fees" and "costs" she clearly did not owe. In light of former Mortgage One loan officer Harold White's testimony at the September 6, 2016 Bench Trial, Aghazu has set forth a plausible claim that her lost opportunity to refinance was proximately caused by Defendants' violation.[23] Assuming she

---

1692a(6). *See also Kennedy v. Lendmark Fin. Servs.*, 2011 WL 4351534, at *3 (D. Md. Sept. 15, 2011), *aff'd sub nom. Kennedy v. Lendmark Fin. Servs., Inc.*, 458 F. App'x 262 (4th Cir. 2011) ("The FDCPA does not, however, apply to creditors collecting debts in their own names and whose primary business is not debt collection."). The point is that the MCDCA applies more broadly than the FDCPA. *See Awah v. Capital One Bank, NA*, 2015 WL 302880, at *4, n.8 (D. Md. Jan. 22, 2015) ("The MCDCA contains a broader definition of 'collector' than the definition of 'debt collector' under the FDCPA.").

The debt collection laws of states other than Maryland also permit plaintiffs to bring suit against creditors as well as debt collectors. In fact, a number of other state debt collection statutes use substantially similar language to the MCDCA's definition of "collector." *See Doucette v. GE Capital Retail Bank*, 2014 WL 4562758, at *3 (D.N.H. Sept. 15, 2014) (concluding that "a creditor that is not a debt collector for purposes of the FDCPA could qualify as a debt collector under" New Hampshire's Unfair, Deceptive, or Unreasonable Collection Practices Act, N.H. RSA ch. 358–C, which defines "debt collector" as "[a]ny person who by any direct or indirect action, conduct or practice enforces or attempts to enforce an obligation that is owed or due, or alleged to be owed or due, by a consumer as a result of a consumer credit transaction"). *See also Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) (stating "a mortgage servicer may be a 'debt collector' under [the Rosenthal Fair Debt Collection Practices Act, Cal. Civ.Code §§ 1788 *et seq.*] even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act."); *Kelliher v. Target Nat. Bank*, 826 F. Supp. 2d 1324, 1327 (M.D. Fla. 2011) ("Although the federal FDCPA does not apply to original creditors, the [Florida Consumer Collection Practices Act, Fla. Stat.§ 559.55 *et seq.*] has been interpreted to apply to original creditors as well as debt collection agencies.").

[22] The MCDCA does not permit a plaintiff to recover punitive damages or attorneys' fees. *See Allen v. Silverman Theologou, LLP*, 2015 WL 2129698, at *7 (D. Md. May 6, 2015).

[23] In Maryland, "proximate cause exists where there is a complete continuance and unbroken sequence between the act complained of and the act finally resulting in the injury, so that one may be regarded by persons of ordinary judgment as the logical and probable cause." *Peckey v. Bank of Am., N.A.*, 2015 WL 1622967, at *5 (D. Md. Apr. 10, 2015) (*citing Scott v. Montgomery County Board of Education,* No. 96–2455, 1997 WL 457521, *5 (4th Cir. Aug.12, 1997) (per curiam)).

can show that her lost opportunity to refinance was proximately caused by Defendants, Aghazu would be entitled to prove by appropriate measure what she has actually lost in this regard. In a situation where, because of a wrongful attempt to collect an invalid debt, a person is denied an opportunity to refinance, one measure of damages is the difference between what the person was obligated to pay under the original loan and what the person would have been required to pay under the refinanced loan. *See Johnson v. Wells Fargo Home Mortg.*, 2012 WL 1229880, at *4 (C.D. Cal. Apr. 11, 2012) ("[I]f a plaintiff asserts that he is entitled to a wrongfully denied loan modification, the amount put into controversy is the difference between the value of the existing loan and the proposed modified loan."). *C.f. Rago v. ING Direct,* 2013 WL 4734012, at *3 (N.D. Ill. Aug. 30, 2013) (citing Restatement (Second) of Contracts § 347 to support its conclusion that one possible method of calculating a plaintiff's damages resulting from an alleged lost opportunity to refinance is to compare plaintiff's "decreased monthly payment at [the] lower interest rate" that would have been owed under the refinanced loan against plaintiff's monthly payment at the higher interest rate under the original loan).[24]

What remains under the MCDCA are Aghazu's claims for emotional distress and mental anguish. *See*, *e.g.*, *Franklin Credit Mgmt. Corp. v. Nefflen*, 436 Md. 300, 308, 81 A.3d 441, 445 (2013); *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 56, 502 A.2d 1057, 1062 (1986). Generally speaking, these are left to the reasonable sensibilities of the jury. The Court would only observe that Defendants' demands that Aghazu pay these demonstrably invalid fees and costs have continued for multiple years, characterized by multiple demands for payment including at least one phantom Notice of Intent to Foreclose, and that they may very well have

---

[24] Even though Defendants have only required Aghazu to pay $1,583.33 per month toward her mortgage instead of the $2,528.15 per month that they might have charged her pursuant to the Consent Order, Aghazu's damages could still be calculated by comparing her obligation to pay $2,528.15 at a 7.0% yearly interest against the lesser amount she would presumably have been required to pay under the refinanced loan.

ultimately caused Aghazu to lose an opportunity to refinance, all of which could conceivably be taken into account in assessing her emotional distress and mental anguish.[25]

### c.  Jury Demand

In her Amended Complaint, Aghazu makes a jury demand. In its March 1, 2016 Memorandum Order, the Court stated that, as of that point, the case "essentially depend[ed] on determinations as to the legal effect of the bankruptcy proceedings and Consent Order – all issues for the Court, not for a jury to decide." Now that the Court has made those determinations, however, the remaining issues are appropriately decided by a jury, as permitted in connection with a MCDCA claim. *See, e.g.*, *Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 730 (D. Md. 2013). *See also Allstate Lien & Recovery Corp. v. Stansbury*, 219 Md. App. 575, 577-78 (2014), *aff'd*, 445 Md. 187, 126 A.3d 40 (2015); *Askew v. HRFC, LLC*, 810 F.3d 263, 272 (4th Cir. 2016). Accordingly, Aghazu is entitled to a jury trial at which the jury may assess (1) whether Defendants actually knew, or were deliberately indifferent to, the fact that they did not possess the right to enforce the claimed debts at issue; (2) whether Aghazu's lost opportunity to refinance her mortgage loan was proximately caused by Defendants and, if so, what the measure of damages in this regard would be; and (3) what damages for emotional distress and/or mental anguish, if any, Aghazu may be entitled to.

## B.  Count V: RESPA Claim

In Count V, Aghazu alleges that FCI failed to give her proper notice of the transfer of the Loan, as required under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605.

---

[25] The Court would also observe that Aghazu has been constrained to litigate for almost two years just to establish that she did not owe attorneys' fees and costs waived after the bankruptcy proceeding or linked to a foreclosure that never took place as well as to establish that she had no <u>personal</u> liability for unpaid property taxes or insurance payments.

In her Amended Complaint, Aghazu once again cites an incorrect subsection of RESPA, 12 U.S.C. § 2605*(b)(3)*, as the statutory basis for her claim. Section 2605(b)(3) imposes notice requirements under RESPA on loan *transferors*, while § 2605(c) imposes similar requirements on loan transferees. As in her original Complaint, Aghazu labels Count V as "RESPA TRANSFEREE VIOLATIONS" and only brings the claim against FCI (the loan *transferee* in the transaction between Severn and FCI). In its March 1, 2016 Memorandum Opinion, the Court advised Aghazu to correct this error in any future amendment to the original Complaint. *See* March 1, 2016 Mem. Op. at 19. She has failed to do so.

But even if the Court were to assume that Aghazu intended to bring her RESPA claim against FCI pursuant to 15 U.S.C. § 2605(c), she would still fail to state a claim upon which relief may be granted. FCI, as a transferee of the Loan, needed only notify Aghazu "not more than 15 days *after* the effective date of the transfer." 12 U.S.C. § 2605(c)(1)-(2) (emphasis supplied). And in fact, FCI, at the very least, avers that it sent Aghazu a draft welcome letter on February 4, 2015 (only three days after the February 1, 2014 transfer of service of the Loan to it). While Aghazu contends that she never received that letter, as previously observed by the Court, her contention appears to be wholly inconsistent with the fact that she included the Borrower Welcome Letter from FCI, dated February 4, 2014, as an exhibit to her original Complaint. Given Aghazu's suggestion that she only received the Borrower Welcome Letter in response to her November 2014 QWR to FCI, the Court, in its March 1, 2016 Memorandum Opinion, directed her to clarify the discrepancy and to expressly explain it in her Amended Complaint. She did not do so, which is to say that, even if Count V were deemed to assert a claim pursuant to § 2605(c) rather than § 2605(b)(3) of RESPA, it would still be dismissible for failure to state a claim.

That aside: even if Aghazu did not receive appropriate notice from FCI within 14 days of the transfer of service, the Amended Complaint does not adequately allege how she was injured by this supposed failure to receive a welcome letter. Her claims for damages in this regard, quite simply, are not cognizable as a matter of law, because time away from one's business, emotional and physical distress, costs, and counsel fees are not compensable under RESPA. *See Offiah v. Bank of Am., N.A.*, No. CIV.A. DKC 13-2261, 2014 WL 4295020, at *3-4 (D. Md. Aug. 29, 2014); *Minson v. CitiMortgage, Inc.*, No. CIV.A. DKC 12-2233, 2013 WL 2383658, at *5 (D. Md. May 29, 2013). The Court, to illustrate, stated in its March 1, 2016 Memorandum Opinion:

> Fundamentally, insofar as Aghazu claims actual damages because FCI's failure to provide adequate notice under RESPA led to the loss of an opportunity to refinance the mortgage on her home, that claim, without more, borders on the fanciful. How could failure to receive the notice of the transfer of the servicing of the Loan lead to a lost opportunity to refinance? Perhaps some logic and facts exist to support this assertion – improbable as that may seem. But for now, the claim has no substance whatsoever. Many more facts would have to be pled to make this claim seem plausible.

So while Aghazu's claim for the lost opportunity to refinance her mortgage may be cognizable under the MCDCA, as indicated previously, her Amended Complaint does not provide the necessary foundation of facts and has set forth no plausible nexus between her purported failure to receive notice under RESPA and the loss of an opportunity to refinance her mortgage.

Accordingly, the Court will **DISMISS** Count V **WITH PREJUDICE**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 35) is **GRANTED IN PART** and **DENIED IN PART**. The Court **DISMISSES** Count V of the Amended Complaint **WITH PREJUDICE**.

Defendants shall, within 20 days, **ANSWER** Aghazu's Amended Complaint as to Count IV, the only remaining Count in the case.

A separate Order will **ISSUE**.

_____ **/s/**

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**March 16, 2017**