IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHINEME C. AGHAZU,** | * |
| Plaintiff, | * |
| v. | * Civil No. **PJM 15-1529** |
| **SEVERN SAVINGS BANK, FSB,** *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

In May, 2015, Chineme Aghazu (Aghazu) sued Severn Savings Bank, FSB (Severn), FCI Lender Services, Inc. (FCI), and Pontus SB Trust (Pontus)[1], alleging violations of the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, the Maryland Consumer Debt Collections Act (MCDCA), Md. Code Ann., Com. Law, § 14-201, *et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq*.

On October 31, 2017, following a lengthy and convoluted litigation path, Aghazu filed the present Motion for Partial Summary Judgment as to Liability Only and for Summary Judgment on Defendants' Counterclaim. ECF No. 73. Defendants FCI and Pontus responded by filing a joint Motion for Summary Judgment on liability. ECF No. 74. For the following reasons,

---

[1] Aghazu's original Complaint (ECF No. 1) named Pontus Capital, LLC, as a Defendant. At the November 9, 2015 Motions Hearing, however, counsel for Pontus SB Trust represented that Pontus Capital, LLC had no direct relationship to the subject loan and property, and that, in fact, Pontus SB Trust was the correct party in interest. Aghazu did not object to the proposed substitution. Accordingly, by Memorandum Order dated November 9, 2015, the Court substituted Pontus SB Trust for Pontus Capital, LLC, as a co-Defendant. ECF No. 17. The Amended Complaint (ECF No. 29) correctly refers to Pontus SB Trust as a Defendant.

1

Aghazu's Motion (ECF No. 73) is **GRANTED IN PART** and **DENIED IN PART**, and Defendants' Motion (ECF No. 74) is **DENIED**.

## I. FACTS

The facts are more fully set out in the Court's March 2, 2016 Opinion. For purposes of the pending Motions, the relevant facts are as follows.

In October 2003, Aghazu obtained a mortgage Loan ("Loan") from Severn in the amount of $265,000.00. Compl. ¶ 8, ECF No. 1. The Loan was evidenced by a Note ("Note 1") secured by a Deed of Trust encumbering Aghazu's home at 7704 Northern Avenue, Glenn Dale, MD 20769 (the "Property"). Compl., Exs. 1, 2, ECF No. 1-1. Aghazu and Severn subsequently agreed to modify the Loan on two occasions: first, on February 11, 2008 (increasing the Loan amount to $340,000.00); later, on August 28, 2008 (increasing the Loan amount to $380,000.00). Compl. ¶¶ 11-12; Compl. Exs. 3, 4, ECF No. 1-1. In addition to increasing the amount of the Loan in August 2008, the parties executed a second Note ("Note 2"), which was a modified version of Note 1. Compl. Exs. 4, 5, ECF No. 1-1.

On August 21, 2009, Aghazu filed for Chapter 7 bankruptcy in this Court. Ch. 7 Case No. 09-25607 (D. Md. Aug. 21, 2009). On October 14, 2009, during the course of the Chapter 7 proceeding, with leave of the Court, she filed an adversary proceeding against Severn, alleging violations of the TILA and wrongful foreclosure. Ch. 7 Case No. 09-25607, Adv. No. 09-719 (D. Md. Oct. 14, 2009). In January 2010, in order to resolve their dispute, the parties executed a Mutual Release and Settlement Agreement and agreed to a Consent Order Resolving [the] Motion to Dismiss [the] Complaint and Dismissing [the] Adversary Proceeding ("Consent Order"). *Id.*; Compl. Ex. 8, ECF No. 1-1.

Pursuant to the Consent Order, Aghazu was permitted to remain in the Property until January 1, 2011 without having to make any mortgage payments. Compl. Ex. 8 ¶ 2. After that time, she was allowed to remain in the Property, provided that she make interest-only payments at the rate of $1,583.33 per month, and provided further that she aggressively market the Property for sale by December 31, 2011. *Id.* If Aghazu failed to close under a contract of sale before December 31, 2011, the Consent Order entitled Severn to exercise all the rights it possessed under the original Loan documents, including Note 2. *Id.* At the same time, under the terms of the Consent Order, each party was absolved of all "claims arising from the Lawsuit or the Borrower's procurement of the Loan." *Id*. ¶ 5. The Consent Order stated that "[t]his Release shall unconditionally remain in effect even if Borrower fails to close under a contract of sale for the purchase of the Property on or before December 31, 2011, and alternatively, this release shall not bar Lender from exercising all of its rights afforded to it under the Loan Documents should Borrower fail to comply with the terms of this Agreement or should closing under a contract not be consummated on or before December 31, 2011, for the purchase of the Property." *Id*. Pursuant to the Consent Order, both Aghazu and Severn were deemed responsible for and left to pay their own legal fees, expenses, and costs. *Id.* ¶ 7.

Aghazu never did sell the Property following the bankruptcy proceeding, and she apparently continues to occupy the Property as of the present date. *See* Compl. ¶ 19; Pl.'s Line to File Exhibits, Aff. Chineme Aghazu ("Aghazu Aff.") ¶ 1, ECF No. 20-1. Beginning January 1, 2011, however, she duly paid and has continued to pay $1,583.33 each month toward her mortgage. These payments correspond to the reduced rate interest-only payment she was obliged to pay after January 1, 2011 under the terms of the Consent Order. Compl. Ex. 8 ¶ 5.

On December 31, 2013, Severn sold Aghazu's Loan to Pontus. Compl. Ex. 10; *see also* Severn's Reply, Ex. 1, ECF No. 7-1. That same day, Severn notified Aghazu that it had sold her Loan to Pontus and further advised that, effective February 1, 2014, servicing of the Loan would be transferred to FCI. Compl. Ex. 10, ECF No. 1-1.

On February 19, 2014, Aghazu sent a payoff request to FCI. Compl. Ex. 11, ECF No. 1-1. On that same day, FCI sent her a payoff statement containing the word "DRAFT" in large letters across the paper, indicating that the amount due under the Loan was $394,669.00. Compl. Ex. 12 at 0188, ECF No. 1-1. The statement included $11,571.70 in "unpaid charges" itemized as "negative escrow balance" and interest. *Id.* On February 25, 2014, FCI sent another payoff statement to Aghazu, this time without the word "DRAFT," and this time informing Aghazu that the total amount due under the Loan was $407,513.49. Compl. Ex. 13, ECF No. 1-1. The February 25, 2014 payoff statement included a line item for "Unpaid Charges" in the amount of $25,988.36. *Id.* A subsequent payment statement sent to Aghazu in October 2014 included a roughly similar figure – $26,860.64 – designated as "Fees" due. Compl. Ex. 15 at 0026.

On September 29, 2014, Pontus sent Aghazu a Notice of Intent to Foreclose her Property. Pl.'s Motion for Summary Judgment ("Pl.'s MSJ"), Ex. 9, ECF 73-10. The Notice yet again cited unpaid fees and costs, this time totaling $26,697.53, payment of which, per Pontus, would be required in order to cure Aghazu's supposed default. *Id.* Similarly, a November 2014 "Demand Loan Payoff" statement from FCI provided that Aghazu owed "Unpaid Charges", this time totaling $26,988.30—consisting of $12,016.93 due for a negative escrow balance, and $14,971.37 due for attorney fees. Pl.'s MSJ, Ex. 6, ECF 73-7.

Around this time, which is to say beginning in December 2013 and continuing until March 2014, Aghazu says she was attempting to refinance her mortgage with an entity known as

4

Mortgage One Solutions ("Mortgage One"). Aghazu Aff. ¶¶ 4, 14, 16, 17. In the process, she says, she requested payoff figures first from Severn and then from FCI in order to facilitate the transaction. *See id.* Aghazu claims, however, that due to the fact that the payoff figures she eventually received from FCI erroneously showed that she owed approximately $25,000 in unpaid fees and costs, Mortgage One declined to refinance her Loan. Pl.'s Line to File Exhibits, Ex. J, ECF No. 20-11. In other words, these additional "fees" and "costs" which Aghazu claims were improper, caused her to lose an opportunity to refinance. Compl. Exs. 12, 13; Pl.'s Line to File Exhibits, Ex. J.

## II. PROCEDURAL HISTORY

On May 27, 2015, Aghazu filed her original Complaint in this Court, alleging that Severn and FCI had failed to provide her with accurate payoff information, in violation of Regulation Z of the TILA, 12 C.F.R. § 1026.36(c)(3) (Count I); that FCI had made a false representation in connection with the collection of her mortgage debt in violation of the FDCPA, 15 U.S.C. § 1692e(2)(A) (Count II); that FCI had engaged in unfair debt collection practices in violation of the FDCPA, 15 U.S.C. 1692f(1) (Count III); that both FCI and Pontus had engaged in unlawful debt collection in violation of the MCDCA (Count IV); and that FCI and Severn had failed to give her adequate notice of a loan servicing transfer in violation of RESPA, 12 U.S.C. § 2605(c) (Count V).

Severn, FCI, and Pontus moved to dismiss all counts of the original Complaint, arguing pursuant to Federal Rule of Civil Procedure 12(b)(6) that Aghazu had failed to state a claim upon which relief might be granted.

On March 1, 2016, the Court issued a Memorandum Opinion and Order dismissing with prejudice Aghazu's TILA and FDCPA claims (Counts I, II, and III) as barred by applicable

statutes of limitations, but dismissing without prejudice her MCDCA and RESPA claims (Counts IV and V) for failure to state a claim.[2] On April 1, 2016, Aghazu filed an Amended Complaint, this time alleging violation of the MCDCA[3] by both FCI and Pontus and violation of RESPA against FCI.

On May 20, 2016, the remaining Defendants, FCI and Pontus, filed a Motion to Dismiss the Amended Complaint for failure to state a claim. The Court, however, felt it was appropriate to consider certain legal issues before it could evaluate the Motion to Dismiss. Accordingly, on September 6, 2016, the Court held a one-day Bench Trial to address the limited issue of where the approximately $25,000 in fees and costs allegedly owed by Aghazu came from, and the effect, if any, that this claimed amount might have had on Aghazu's efforts to refinance with Mortgage One.

At the Bench Trial, and in its September 7, 2016 Order issued the next day, the Court made two key findings. <u>First</u>, it determined, as a matter of law, that the attorneys' fees and costs Defendants claimed Aghazu owed in fact represented either attorneys' fees and costs incurred by Severn during Aghazu's bankruptcy proceedings and that other fees and costs had been incurred in preparation for a threatened foreclosure in 2011 that had never actually been initiated. The Court held that, in light of the provision of the Consent Order following the bankruptcy proceeding that made each party responsible for their own legal fees, expenses, and costs, any attorneys' fees or costs Defendants or their predecessor in interest (i.e. Severn) may have

---

[2] By Order dated November 9, 2015, the Court dismissed Count V with prejudice as to Severn. Accordingly, because Count I, the only remaining claim against Severn, was also dismissed with prejudice, Severn was and is no longer a Defendant in the case.

[3] As in her original Complaint, Aghazu incorrectly refers to this Act as the "Maryland Consumer Debt Practices Act." Although she clarified in later pleadings that Count IV alleged violations under the Maryland Consumer Debt *Collections* Act (MCDCA) (emphasis supplied), her Amended Complaint, once again, refers to the MCDCA by the wrong name.

incurred during the bankruptcy proceedings were fully disposed of by the Consent Order and were not properly collectible by Defendants. The Court also determined that Aghazu could not be held responsible for fees and costs associated with a foreclosure that was never initiated. In sum, the Court held as a matter of law that Aghazu was liable for none of the attorneys' fees and costs claimed by Severn or Defendants. <u>Second</u>, the Court held that, following a bankruptcy, unpaid property taxes or insurance payments could only become a lien on the property, but were not collectible from the property owner (in this case, Aghazu) <u>personally</u>.

At the Bench Trial, the Court also heard testimony from Harold White, Aghazu's Mortgage One Loan Officer, who stated that Aghazu's loan had in fact been tentatively approved pending payoff figures, but that after Mortgage One received the payoff figures from Defendants, her loan had been denied. He specifically stated that the loan was denied because of the change in the loan-to-value ratio. When the Court inquired whether the $25,000 listed in fees and costs affected the approval of Aghazu's loan, White testified that "the $25,000 additional was the thing that pretty much took it to where it was an approvable loan to non-approvable loan." White also said, however, that if Aghazu had not sought to take out $20,000 in cash as part of the loan, she could have gone forward with the transaction.

On March 16, 2017, the Court issued a Memorandum Opinion and Order granting Defendant's Motion to Dismiss as to Count V, which alleged that FCI violated RESPA when it failed to give Aghazu proper notice of the transfer of the loan. ECF Nos. 61 & 62. However, the Court denied the Motion to Dismiss as to Count IV alleging violations of the MCDCA. *Id.* Following that Opinion and Order, FCI and Pontus filed an Answer to the Amended Complaint and a Counterclaim, arguing that Aghazu had breached the Consent Agreement 1) by failing to

sell her house as scheduled by December 31, 2011, and 2) by failing to revert to the Loan Documents and make monthly payments of principal and 7% interest. ECF No. 63.

On October 31, 2017, Aghazu filed the present Motion for Summary Judgment as to Liability Only as to Count IV, arguing that there is sufficient evidence to find as a matter of law that Defendants violated the MCDCA by seeking to collect fees and costs they were not entitled to, with the knowledge that they were not entitled to them. ECF No. 73. She also seeks summary judgment on the counterclaim, positing that the Consent Order does not allow for debt acceleration unless Aghazu failed to make a payment, which she has not done. *Id.* On November 1, 2017, Defendants filed a Motion for Summary Judgment on the grounds that Aghazu has not designated any expert witnesses and thus is unable to establish damages at trial. ECF No. 74.

Both Motions have been fully briefed, and the Court heard oral argument on February 7, 2018.

### III. STANDARDS OF LAW

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean, however, that "*some* alleged factual dispute between the parties" defeats the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original).

### IV. ANALYSIS

1. **Aghazu's Motion for Partial Summary Judgment as to Liability.**

   a. *The MCDCA Applies to the Disputed Debt Collection and Aghazu is Entitled to Partial Summary Judgment with Respect to her Claim.*

8

Aghazu's sole remaining claim is pursuant to MCDCA § 14-202(8), which provides that a collector of a debt may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann. Com. Law § 14-202(8); Mem. Opinion at 13, ECF No. 61. Despite the fact that the Court found in its March 16, 2017 Memorandum Opinion that Aghazu has standing to assert an MCDCA claim, Defendants have again raised the issue of whether she "even qualifies for review under the MCDCA." Opp. Mem. at 4, ECF No. 75-1. Specifically, Defendants argue that questions remain regarding "a) whether Plaintiff is a consumer, b) whether the loan at issue was a consumer loan, [and] c) whether attempts were actually made to 'collect' from Plaintiff under the law." The Court finds, again, that Aghazu has satisfied these requirements and that she has done so as a matter of law.

The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md.Code Ann., Com. Law, § 14–201(b).[4] "Consumer transaction" is defined as "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." Id. § 14–201(c). Plainly, this definition extends to an individual homeowner seeking a home loan to make improvements on her primary residence, as is the case with Aghazu. ECF No. 70-8, ¶ 1. Because she did not receive the loan to improve her property for commercial or business purposes, as a matter of law she qualifies as a "person seeking or acquiring . . . money, or credit for personal, family or household purposes."

In addition, the Court finds as a matter of law that the communications from Defendants to Aghazu in 2014 qualify as attempts to collect a debt under the MCDCA. The October 10,

---

[4] The plain meaning of the MCDCA's definition of "collector" extends to Pontus, the creditor, as well as FCI, the debt collector. Courts in Maryland have specifically acknowledged that creditors are appropriate defendants in MCDCA suits. *See, e.g., Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md. 2013) (stating that "the MCDCA [] allows for recovery against creditors that attempt to collect debts when there is no right to do so").

2014 "Payment Statement" from FCI to Aghazu listed $26,860.64 in "total fees charged" and included a tear off portion at the bottom for Aghazu to detach and mail with her payment (the tear off portion lists her "Amount Due" as $28,443.97—$26,860.64 in fees plus the $1,583.33 monthly interest-only payment). Pl. MSJ, Ex. 5, 73-6. The inclusion of the tear off portion qualifies the "Payment Statement" as a demand for payment.

Furthermore, on November 17, 2014, Defendants issued a "Demand Loan Payoff" which includes "Unpaid Charges" totaling $26,988.30. Pl. MSJ, Ex. 6, 73-7. The "Itemization of Unpaid Charges" lists $12,016.93 in "Negative Escrow Balance" and $14,971.37 in "Attorneys [sic] Fees." *Id.* This document also constitutes a demand for payment.

Accordingly, the Court finds as a matter of law that Aghazu has standing to bring a claim against FCI and Pontus under the MCDCA—she is a consumer under the Act, her home loan qualifies as a consumer transaction, and Defendants attempted to collect a debt from Aghazu that she has long claimed she does not owe.

> b. *There Remains a Disputed Issue of Material Fact as to Defendants' Actual or Constructive Knowledge that They Lacked the Right to Collect the Debt.*

"To plead a claim under [Section § 14-202(8) of] the MCDCA, Plaintiff must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so." *Lewis v. McCabe Weisberg & Conway,* 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014).

As discussed *supra*, at the September 6, 2016 Bench Trial, the Court determined <u>as a matter of law</u> that Aghazu did not owe Defendants the approximately $25,000 in fees or costs because either they were disposed of as part of the Consent Order ending the bankruptcy litigation or they were incurred in connection with a foreclosure that was never actually initiated

or, as to property taxes for the Fiscal Year 2010, they could not be recovered from Aghazu personally, they could only be added as a lien on her property. *See Forsyth Cty. & City of Winston-Salem Tax Collector v. Burns*, 891 F.2d 286 (4th Cir. 1989); *Rhoads v. Sommer*, 401 Md. 131, 157, (2007); *United States v. Alfano*, 34 F. Supp. 2d 827, 850 (E.D.N.Y. 1999).

Still, it remains disputed whether Defendants actually or constructively knew that they were not entitled to those fees when they attempted to collect them in 2014.[5] Defendants argue that they "were relying exclusively on the books and records provided by [Severn] . . . " and that they "did not even acquire their interests until years later and there has been no evidence whatsoever that they were informed of any problem with those charges at the time of their acquisition." Opp. At 9, ECF No. 75-1.

On the other hand, it is uncontested that, as of 2014, when the dispute over the $25,000 charges first surfaced, Defendants made no effort to determine what the amounts in the books and records were actually based upon. While that certainly raises a strong presumption that Defendants had at least constructive knowledge that they were not entitled to the charges, the Court at this juncture will leave the entire matter of Defendants' knowledge—actual or constructive—that they were not entitled to the charges to the jury to decide. The matter can always be re-visited, if necessary, post-trial.

Accordingly, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment as to Liability **IN PART** and **DENIES** it **IN PART**. While the Court finds, as a matter of law, that FCI and Pontus were not entitled to the unpaid charges that they were seeking, and that at least

---

[5] At oral argument on the present motions, held on February 7, 2018, counsel for Defendants appeared to argue that Defendants did not have knowledge that Aghazu even disputed the charges. Feb. 7, 2018 Hr. Tr. at 12:18-14:17. But the evidence clearly suggests that beginning in 2014, when she first asked Defendants for the loan payoff figures, she claimed the charges were not due. And, of course, as of May 27, 2015, the date Aghazu filed the present lawsuit, Defendants definitely knew that she opposed the charges.

some of their communications to Aghazu in 2014 constituted demands for those payments, there remains the question regarding Defendants' actual and/or constructive knowledge of the debt's invalidity.

**2. Summary Judgment on Defendants' Counterclaim is Inappropriate.**

Following the March 1, 2017 Opinion and Order denying in part Defendants' Motion to Dismiss, Defendants filed an Answer to the Amended Complaint and a Counterclaim against Aghazu. ECF No. 63. The counterclaim alleges a single count for breach of contract, arguing that Aghazu breached the Consent Order when she failed to sell her house by December 31, 2011, and failed to revert to monthly payments of principal plus 7% interest provided by the original Loan Documents. Defendants seek at least $58,578.84 in damages, which they calculate as the difference of $944.82 per month between Aghazu's monthly payments of 5% interest only ($1,583.33) and the amount she purportedly owes under Note 2 (principal plus 7% interest for a monthly payment of $2,528.15), from January 1, 2012 until such time as the "breach" is cured. Counterclaim, ¶¶ 6-9, ECF No. 63; Compl. Ex. 5, ECF No. 1-1.

Aghazu seeks summary judgment on the counterclaim on the grounds that she has continued to perform under the terms of the Consent Agreement, and that Defendants, while they may at one time have had a right under the Agreement to revert to the original loan terms, never exercised that right. As a result, Aghazu argues, FCI and Pontus cannot now retroactively invoke their right to higher monthly payments nor accelerate those rights to demand back payment of those higher payments.

The Consent Order plainly suggests that Defendants reserved the right to revert to the Loan Documents if Aghazu failed to sell her property on or before December 31, 2011. What is

open to question is whether Defendants may have waived that right.[6] In other words, can Defendants now exercise that right and/or demand all or any part of the difference between the payments they received and the payments they might have been owed under the original Loan Documents? And what will be Aghazu's obligations, if any, going forward?

Accordingly, the Court will **DENY** Plaintiff's Motion for Summary Judgment on the Counterclaim.

### 3. Defendants' Motion for Summary Judgment.

Defendants argue that they are entitled to Summary Judgment because Aghazu has failed to designate an expert to testify as to her damages and that her discovery responses "completely [fail] to itemize any claims of damages despite a specific request in discovery." Def. MSJ ¶5, ECF No. 74. Aghazu counters that she is entitled to damages for emotional distress, which do not require the testimony of an expert witness, and that she already proven that she lost a refinancing opportunity as the result of Defendants' actions.

The MCDCA provides that "[a] collector who violates any provision of this subtitle is liable for damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." *Fontell v. Hassett*,

---

[6] Despite the fact that the Consent Order contains language of non-waiver, a mortgagor may defeat acceleration and reinstate her mortgage obligations under certain circumstances. Restatement (Third) of Prop.: Mortgage § 8.1 (Am. Law Inst. 1997). As comment (e) to that Section provides,

> [An "anti-waiver" provision's] effect will be negated where the pattern of accepting late payments is sufficiently continuous and prolonged to justify the conclusion that the mortgagee has abandoned or waived the protection of the provision.

*Id.* at cmt. e.

As further indicated in that comment, "estoppel, fraud, or bad faith provide appropriate theories for defeating acceleration." *Id.* Although this kind of relief appears to be equitable in nature and would ordinarily be for the Court, not a jury, to decide, the Court is prepared to submit the issue to the jury for at least an advisory opinion. *See* Fed. R. Civ. P. 52(a)(1).

870 F. Supp. 2d 395, 411 (D. Md. 2012). Because Aghazu is authorized to seek emotional distress or mental anguish damages under the MCDCA, she can establish that she is entitled to at least one category of damages without designating an expert.[7] As for the amount of the emotional damages, any failure to specify is not fatal, since emotional damages are obviously indeterminate and virtually impossible to quantify.

At the same time, Aghazu may also be able to establish actual damages as a result of her lost opportunity to refinance with Mortgage One. At the Bench Trial, Aghazu called as a witness Mortgage One Loan Officer Harold White, who testified that Aghazu's loan had been approved pending receipt of payoff figures from Defendants, but that after Mortgage One received the payoff figures from Defendants, including the allegedly unpaid fees and costs, her loan was denied because the loan-to-value ratio had changed. White also noted, however, that Aghazu's loan may have been doomed by her request to take out $20,000 in cash as part of the loan.

While Aghazu initially failed to disclose the terms of her potential refinanced loan during formal discovery, she has, with leave of Court, since supplemented the record with a report from White detailing the terms of the refinance loan Mortgage One was prepared to offer. ECF No. 81. As Aghazu's counsel admitted during oral argument, however, the terms of the refinanced loan may not have been more favorable to Aghazu than the terms she had with Severn, in which case she would not be entitled to a separate element of damages for this lost opportunity. Feb. 7, 2018 Hr. Tr. at 55:4-7 ("We wouldn't be claiming it as a damage then, your Honor. We're looking for affirmative relief. So it doesn't matter if the numbers are negative.

---

[7] In the Court's March 16, 2017 Opinion, it noted: "What remains under the MCDCA are Aghazu's claims for emotional distress and mental anguish. Generally speaking, these are left to the reasonable sensibilities of the jury. The Court would only observe that Defendants' demands that Aghazu pay these demonstrably invalid fees and costs have continued for multiple years, characterized by multiple demands for payment including at least one phantom Notice of Intent to Foreclose, and that they may very well have ultimately caused Aghazu to lose an opportunity to refinance, all of which could conceivably be taken into account in assessing her emotional distress and mental anguish."

We're just looking then at the action of the refinance not be[ing] granted."). On the other hand, as stated, whether the eventual terms of the refinanced loan might have been better or worse, any anxiety that Aghazu may have sustained over the status of the refinance caused by Defendants' insistence that she owed for charges she did not in fact owe—Will I get it or won't I?—most definitely would be part of the emotional distress she claims as a result of Defendant's insistence that she owed the charges.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment as to Liability Only and Summary Judgment on Defendants' Counterclaim (ECF No. 73) is **GRANTED IN PART**, except to the extent that Defendant's actual or constructive knowledge that the $25,000 (more or less) of charges has not been established as a matter of law. In that single respect, Plaintiff's Motion is **DENIED IN PART**. Plaintiff's Motion for Summary Judgment on the Counterclaim (ECF No. 73) is also **DENIED**. Defendants' Motion for Summary Judgment (ECF No. 74) is **DENIED**.

A separate Order will **ISSUE**.

                                                                                            /s/
                                                  **PETER J. MESSITTE**
                                      **UNITED STATES DISTRICT JUDGE**

**April 18, 2018**